RAPAPORT LAW FIRM, PLLC
Marc A. Rapaport
Meredith R. Miller
One Penn Plaza, Suite 2430
New York, NY 10119
Telephone: (212) 382-1600
mrapaport@rapaportlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARIO LLIVICHUZHCA, ILDIFONCIO
MAYANCELA,  LUIS MAYANCELA, and
LUIS RODRIGO ANGAMARCA, individually
and on behalf of all others similarly situated,

                  Plaintiffs,               **COLLECTIVE & CLASS
                                      ACTION COMPLAINT**

                  vs.

ALPHACRAFT CONSTRUCTION INC.
and  MICHALAKIS THEODOROU a/k/a
MICHAEL THEODOROU and a/k/a MIKE
THEODOROU,

                  Defendants.
----------------------------------------------------------------X

Plaintiffs MARIO LLIVICHUZHCA ("Llivichuzhca"), ILDIFONCIO  MAYANCELA

("Ildofoncio M."), LUIS MAYANCELA ("L. Mayancela"), and  LUIS RODRIGO

ANGAMARCA ("Angamarca") (collectively, the "Plaintiffs" and/or "Named Plaintiffs")

individually and on behalf of all others similarly situated, as class representatives, upon

personal knowledge as to themselves and upon information and belief as to other matters, by

and through their attorneys, RAPAPORT LAW FIRM, PLLC, as and for their Complaint,

allege:

## PRELIMINARY STATEMENT

### The Nature of Plaintiffs' Claims:

1.      This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 *et seq.* and the collective action provision of 29 U.S.C. § 216(b) to recover

unpaid overtime wages, minimum wages, unlawful deductions, and other wages owed to Plaintiffs and similarly-situated laborers/construction workers by Defendants – a Queens (Bayside) based construction contractor and its owner – from February 15, 2015 to the date of trial.

2.     Plaintiffs also bring this action for themselves and on behalf of similarly situated current and former employees of defendants pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.* and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, from February 15, 2012 to the date of trial.

3.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of forty (40) hours per week, without receiving applicable minimum wage or appropriate compensation for hours over forty (40) per week that they worked.  Defendants' conduct extends beyond Plaintiffs to all other similarly situated employees.

4.     Throughout the periods during which Plaintiffs worked for Defendants, Defendants failed to provide paystubs or any other notice required by the NYLL and unlawfully required Plaintiffs and similarly situated employees to provide and pay for their own "tools of the trade."

## JURISDICTION AND VENUE

5.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1137 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.  The Court has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. §1367.

6.     Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because Defendants transact business and have agents in the Eastern District and this is the judicial district in which the events giving rise to the claims occurred.  Defendants have facilities and employed Plaintiffs and Collective and Class Members in this district.

7.     This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiffs within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

## THE PARTIES

**Plaintiffs**

8.     Llivichuzhca is an adult, natural person who resides in the City of New York, County of Queens and State of New York.

9.     I. Mayancela is an adult, natural person who resides in the City of New York, County of Queens and State of New York.

10.     L. Mayancela is an adult, natural person who resides in the City of New York, County of Queens and State of New York.

11.     Angamarca is an adult, natural person who resides in the City of New York, County of Kings and State of New York.

**Defendants**

12.     At all times hereinafter mentioned, Alphacraft Construction Inc. ("Alphacraft"), was and  is a domestic corporation doing business in New York State with a principal office for the conduct of business at  58-21 230 Street, Bayside, New York 11364.

13.     Upon information and belief, during the past six years, Alphacraft employed in excess of 100 construction/renovation laborers, who performed painting, flooring, carpentry, cabinetry, drywall, and other types of labor relating to high end interior renovation projects.

3

14.   Defendant Michalakis Theodorou a/k/a Michael Theodorou and a/k/a Mike Theodorou ("Theodorou") is an adult natural person who resides in the City of New York, County of Queens, and State of New York.

15.   Upon information and belief, Theodorou resides at 58-51 230 Street, Oakland Gardens, New York 11364.

16.   Upon information and belief, at all relevant times, Theodorou was the President and/or owner and/or highest ranking officer of Alphacraft, and he exercised (and continues to exercise) ultimate decision-making responsibility and operational control for Alphacraft, including control over wage and hour practices and policies.

17.   At all relevant times, Theodorou had the authority to hire and fire Alphacraft's employees.

18.   At all relevant times, Theodorou possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

19.   Theodorou is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

20.   Theodorou determined the wages and compensation of the employees of Alphacraft, including the Plaintiffs.

21.   Theodorou exercises sufficient control of the Defendants' day to day operations to be considered Plaintiffs' and Class Members' employer under the FLSA and the NYLL.

22.   Upon information and belief, Theodorou is liable for the wages of Plaintiffs and those similarly situated under New York Business Corporation Law § 630 and New York

Limited Liability Company Law § 609(c), as well as in his individual capacity as employer under the FLSA and the NYLL.

## CLASS ACTION ALLEGATIONS

23.    Plaintiffs bring this action individually and as a class action on behalf of all persons similarly situated and proximately damaged by Defendants' conduct, including, but not necessarily limited to, the following Plaintiffs Classes:

*FLSA Class:*

24.    The FLSA Class refers to all persons who are, or have been, employed renovation/construction workers by Alphacraft (the "FLSA Collective Plaintiffs") from three (3) years prior to this action's filing through the date of the final disposition who elect to opt in to this action.

25.    This action claims that Defendants violated the wage and hour provisions of FLSA by depriving Plaintiffs, as well as others similarly situated to them, of their lawful wages.  Upon information and belief, there are at least 100 similarly situated current and former employees who worked for Alphacraft during the three-year period preceding the filing of this complaint, who have been underpaid in violation of the FLSA and were subjected to the same, unlawful wage policies and practices as Plaintiffs, and who would benefit from court-supervised notice of, and the opportunity to join, this lawsuit.

26.    Upon information and belief, at all relevant times, Defendants are aware and have been aware of the requirements to pay Named Plaintiffs and FLSA Collective Plaintiffs at amounts equal to the rate of one and one-half times their regular rates of pay for all hours worked each workweek above forty, yet they purposely and willfully chose not to do so.

27.    The names, contact information, wages, and other relevant information regarding the FLSA Collective Plaintiffs are readily ascertainable, such information being in the possession and control of Defendants.

28.     Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid compensation, unpaid overtime, an equal amount of liquidated damages and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

*The New York Class – Rule 23 Class Allegations:*

29.     The New York Class refers to all persons who are, or have been, employed as construction/renovation workers by Alphacraft on or after the date that is six years before the filing of the Complaint in this case and the date of final judgment in this matter as defined herein.

30.     The Rule 23 Class Members are readily ascertainable.  The number and identity of the New York Class are determinable from the records of Defendants.  The positions held, and nature and extent of certain unlawful deductions from wages are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

31.     The Defendants, their officers, and directors are excluded from the Classes, as well as all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

32.     This action has been brought and may properly be maintained as a class/collective action under Fed.R.Civ.P. Rule 23 and 29 U.S.C. §216 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

(a) Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the classes are so numerous that joinder of all members is impractical.  Membership in the Plaintiff Classes will be

6

determined upon analysis of employee and payroll records, among other records maintained by Defendants.

(b) <u>Commonality</u>:  Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy.  Consequently, class certification is proper under Fed.R.Civ.P. Rule 23(b)(3) and 29 U.S.C. §216(b).  For example, Alphacraft's practice and policy of failing to comply with New York Labor Law requirements pertaining to wage notices and pay statements, as alleged above, applies to all members of the New York Class, and the relief demanded (including, *inter alia*, the demand for injunctive and declaratory relief) affects the entire class.

(c) <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Plaintiffs Classes. Plaintiffs and members of the Plaintiffs Classes sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of state and federal law, as alleged herein.  Upon information and belief, all New York Class Members were subject to the same corporate practices of Alphacraft of failing to pay overtime compensation; unlawful wage deductions; violations of NYLL §195(3) by failing to issue accurate and complete wage statements to employees that correctly identified the name of the employer, address of employer, rates of pay or basis thereof, regular hourly rate, number of overtime hours worked; and violations of NYLL §195(1) by failing to provide to employees, upon hiring, a written notice in English and the employee's primary language setting forth the employee's rates of pay and basis thereof, the name of the employer, physical address of the employer's

7

business, names and aliases used by the employer, and other legally-mandated disclosures.

(d) <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.  The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.  Plaintiffs are informed and believe, and based thereon allege, that Defendants, have acted and refused to act on grounds generally applicable to all claims, thereby making appropriate injunctive and monetary relief for all members of each class. Consequently, Class certification is proper under Fed.R.Civ.P. 23(b)(2) and 29 U.S.C. § 216(b).

(e) <u>Adequacy of Representation</u>: Plaintiffs are adequate representatives of the Plaintiffs Classes, in that their claims are typical of those of the Plaintiffs Classes and they have the same interests in the litigation of this case as the Class Members. Plaintiffs are committed to vigorous prosecution of this case, and have retained competent counsel, experienced in employment litigation of this nature, who have been diligent in investigating the claims of Plaintiffs and putative Class Members. Upon information and belief, Plaintiffs are not subject to any individual defenses unique from those applicable to the Class.

33.     Proceeding as a class action provides Rule 23 Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while reducing risks of retaliation.

## COMMON FACTUAL ALLEGATIONS

34.     As described herein, Defendants have, for years, knowingly failed to adequately compensate those employees within the class definitions identified above for wages, including overtime wages due, under the FLSA (29 U.S.C. §§ 206 and 207) and the NYLL (Article 19), and unlawfully deducted sums from wages in violation of the New York Wage Payment Act, Labor Law § 190, et seq., the New York Labor Law § 650, et seq., and New York Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.  Among other means, Defendants engaged in unlawful business practices by requiring employees to work numerous hours of overtime without overtime compensation.  In addition, Defendants took unlawful deductions from the wages of Plaintiffs by requiring them to provide and pay for the cost of  pay the cost of "tools  of the trade," such as drills, hands saws, knives, grinders and similar tools.

35.     Upon information and belief, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

36.     At all relevant times, all of the Defendants were joint employers of Plaintiffs and the FLSA Collective and Rule 23 Class members within the meaning of the FLSA and the NYLL, having operated as a unified residential general contracting business.

37.     Defendants employ employees at their places of business in the activities of an enterprise engaged in commerce, including employees handling or otherwise working on goods or materials (such as construction tools, supplies, cement, sand, gravel and other types of building materials produced outside of the State of New York) that have been moved or

produced for commerce. The enterprise has an annual gross volume of sales made or business done in an amount not less than $500,000.  Therefore, the employees are employed in an enterprise engaged in commerce within the meaning of section (3)(s)(1)(A) of the FLSA.

38.     At all relevant times, the Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

39.     Theodorou has a direct economic interest in Alphacraft.

40.     Consistent with their policies and patterns or practices, Defendants harmed Named Plaintiffs individually, as set forth below.

*Defendants' Wage and Hour Violations Affecting Plaintiffs*

41.     No notification, either in the form of posted notices, or other means, was given to any of the Plaintiffs regarding wages as was required under the FLSA and NYLL.

42.     Defendants did not give any notice to Plaintiffs, in English and in Spanish (Plaintiffs' primary language), of their respective rates of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

43.     Defendants failed to maintain any means of accurately keeping track of the hours that any of the Plaintiffs worked, and they did not ask Plaintiffs to record their hours.

44.     Defendants did not provide Plaintiffs with uninterrupted meal periods.

45.     Plaintiffs received no spread-of-hours pay required under the NYLL, even though Plaintiffs frequently worked shifts that lasted longer than ten (10) hours.

46.     Plaintiffs' work duties require neither discretion nor independent judgment.

47.     Defendants failed to provide  Plaintiffs with paystubs and/or wage notices.

**Llivichuzhca.**

48.     Llivichuzhca was employed by Defendants beginning in or about 2012 until approximately May 2017.   During his employment, Llivichuzhca's duties involved

performing labor (such as painting and carpentry) at residential construction/renovation projects. Subsequently, commencing in early 2014, Llivichuzhca was also assigned driving responsibilities, in which capacity he would drive other workers to worksites, as well as construction materials.

49.     As a result of Llivichuzhca's driving responsibilities, he began working each day at approximately 7:00 a.m. and stopped at approximately 5:30 p.m., for an average of ten hours per day (fifty hours per week), with no premium overtime pay.

50.     Instead, Defendants paid Llivichuzhca at straight time rates for all hours, even those over forty in a workweek.

51.     Defendants failed to maintain accurate recordkeeping of the hours that Llivichuzhca worked. Llivichuzhca was not asked to keep track of his time, nor to his knowledge, did the Defendants utilized any time tracking device, such as punch cards, that accurately reflected his actual hours worked. Upon information and belief, Defendants' policy of failing to accurately keep track of hours worked was a practice and policy that was applied across the board to all such workers. This resulted in Llivichuzhca (and other employees) not receiving any compensation at all for certain overtime hours that they worked.

**Ildofoncio M.**

52.     Ildofoncio M. was employed by Defendants beginning in or about 2008 through in or about April 2016.

53.     Ildonfoncio M. performed work that spanned all aspects of interior renovation, including, *inter alia*, painting, plastering, demolition, flooring and general labor such as cleaning.

11

54.    During summer months, when workloads were particularly demanding, Ildonfoncio M. typically worked six days per week, from Monday through Saturday, for an average of 56 hours per week.

55.    Initially, Defendants paid Ildofoncio M. the fixed daily sum of $140.00 per day, regardless of the number of hours per day or per week that he worked.  Thereafter, in or about 2014, his daily pay was increased to $150.00.  His daily pay amount did not vary even when he was required to stay later or work a longer day than his usual schedule.  The daily pay that Ildofoncio M. received covered only his first forty hours of work per week, and he was not paid 1.5 times his regular rate of pay for substantial overtime hours that he worked each week.

56.    Additionally, like other workers, Ildonfoncio M. was require to provide and pay for his own work tools, including, *inter alia*, spatulas, brushes, a hammer and work gloves.

**L. Mayancela.**

57.    L. Mayancela was employed by Defendants to perform interior renovation work for approximately ten years, beginning in or about 2006 through in or about March 2017.

58.    Like the other Plaintiffs herein, L. Mayancela performed carpentry, painting, flooring, cabinetry and other types of renovation work for Defendants at projects located throughout New York City, and he was subjected to the same FLSA and NYLL wage violations as them, to wit: although he regularly worked substantially more than forty (40) hours per workweek, he never received overtime pay of 1.5 times his regular rate of pay for hours he worked above forty (40) each week.

59.    During summer months throughout his ten years of employment, L. Mayancela worked six days per week (Monday through Saturday).  On weekdays, he

typically started working at approximately 7:00 a.m. and stopped at approximately 6:00 p.m., with a thirty-minute lunch break. On Saturdays, he worked from approximately 7:00 a.m. to approximately 5:00 p.m. Therefore, L. Mayancela's summer work schedules typically entailed workweeks of 55 or more hours.

60. Throughout 2015 and 2016, L. Mayancela worked consistently worked six days per week at all times of the year, with a typical workweek of 55 or more hours, without being paid 1.5 times his effective, regular hourly pay rate for hours worked above the first forty per week.

61. When he worked five days per week (on average, beginning at approximately 7:00 a.m. and stopping at approximately 6:00 p.m.), L. Mayancela's schedule involved 10 overtime hours. But he was never paid 1.5 times his effective hourly rate of pay for the 10 hours of overtime that he worked per week.

62. Initially, Defendants paid L. Mayancela $140.00 per day, even for days when he worked longer hours, without any premium compensation for overtime hours. In or about 2016, his daily wage was increased to $150.00, regardless of the number of hours per day or per week that he worked. Defendants did not pay premium overtime compensation to L. Mayancela. In light of the manner in which L. Mayancela was paid, he was not paid any wages for certain hours of work.

63. Upon information and belief, Defendants failed to maintain accurate recordkeeping of L. Mayancela's work hours. L. Mayancela was not asked to keep track of his time, nor to his knowledge, did Defendants utilized any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

64. L. Mayancela was required to provide his own work tools, including, but not limited to knives, hammers, and screwdrivers, all at his own expense.

**Angamarca.**

65.    Angamarca was employed by Defendants as a construction/renovation worker beginning in or about April 2003 until on or about May 12, 2017.

66.    Angamarca typically started each workday at approximately 7:00 a.m. and stopped at approximately 4:30 p.m.

67.    Angamarca did not have an uninterrupted break during each of his work days, and, as such, he typically worked ten hours per day.   Thus, throughout his entire period of employment, Angamarca's five-day workweeks entailed 50 hours of work per week.

68.    In certain summer months, Angamarca also worked on Saturdays.  During these periods, Angamarca worked in excess of 55 hours per week.

69.    Defendants paid Angamarca a fixed daily sum of $180.00, that did not vary even when Angamarca was required to work longer shifts.  During the entire period of his employment, Angamarca was never paid premium overtime compensation, despite working more than 40 hours in most weeks.

70.    In or about 2014, Defendants instructed Angamarca to perform carpentry, flooring and cabinet work on weekends at the Long Island residence of Theodorou's daughter. This resulted in Angamarca working at least sixty (60) hours per week for approximately two months.  Angamarca should have been paid 1.5 times his regular hourly pay rate for the twenty hours of overtime work per week that he performed during this period.  However, Defendants only paid Angamarca at his regular rate for all hours, without any premium overtime pay.

71.    On other occasions, Angamarca performed work on weekends at Theodorou's residence in Queens, which led to him working substantially more than 40 hours during these work weeks.

14

72.     Like the other Plaintiffs herein, Angamarca was required to provide his own tools, including a drill and hand tools, at his own cost.  He never received paystubs and/or wage notices.

## AS AND FOR A FIRST  CAUSE OF ACTION
### FLSA Minimum Wage Violations
### (On Behalf of Plaintiffs and the FLSA Class)

73.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

74.     At all times relevant to this action, Defendants were Plaintiffs' employers and employers of the putative FLSA class members within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

75.     At all times relevant to this action, Defendants were engaged in commerce or in an industry and/or activities affecting commerce.

76.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all of their hours worked, resulting in Plaintiffs' effective, hourly pay rates falling below the require minimum wage.

77.     Plaintiffs were victims of  Defendants' common policy and practices of violating minimum wage rights under the FLSA by failing to compensate Plaintiffs and Class Members for all hours that they worked, and obfuscating this unlawful practice by not providing wage notices and paystubs.

78.     Defendants failed to pay Plaintiffs and putative FLSA class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

79.     Defendants' failure to pay Plaintiffs and FLSA Class Members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

80.     Plaintiffs and FLSA Class Members were damaged in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*
### (On Behalf of Plaintiffs and the FLSA Class)

81.     Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

82.     At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed members of the FLSA Class as painters, finishers, plasterers, framers, dry wall workers, carpenters and/or to perform other construction/renovation-related tasks, which engaged the employees in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).  At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

83.     Plaintiffs are informed and believe, and thereon allege, that Defendants have required, or require, the FLSA Class Members as part of their employment to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

84.     Plaintiffs and members of FLSA Class Members routinely worked substantially more than forty (40) hours per week, yet did not receive overtime compensation at 1.5 times their effective, hourly rate of pay for the work, labor and services they provided to Defendants for hours worked above the first (40) per workweek, as required by the FLSA, 29 U.S.C. §§ 206 and 207.  The precise number of unpaid overtime hours will be proven at trial.

85.     Plaintiffs propose to undertake appropriate proceedings to have FLSA Class Members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and join this action as plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to join with the Court.

86.     Defendants' violations of the FLSA's overtime provisions were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

87.     As a result of the foregoing, Plaintiffs seek judgment against Defendants on their own behalf, and on behalf of those FLSA Class Members similarly situated who file written consents to join in this action, for all unpaid wages, including minimum wage and overtime wages owed by Defendants to Plaintiffs and the FLSA Class, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and attorneys' fees, as provided for under 29 U.S.C. § 216(b).

**AS AND FOR A THIRD CAUSE OF ACTION**
**New York Labor Law – Minimum Wages**
**(On Behalf of Plaintiffs and the New York Class – FRCP Rule 23)**

88.     Plaintiffs, for themselves and on behalf of the New York (Rule 23) Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

89.     The minimum wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiffs.

90.     Defendants, in violation of the NYLL, willfully paid Plaintiffs and Class members less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

91.     Plaintiffs and Class Members were damaged in amounts to be determined at trial.

92.     Due to Defendants' willful violations of the NYLL, Plaintiffs and members of the New York (Rule 23) Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (On Behalf of Plaintiffs and the New York Class – FRCP Rule 23)

93.     Plaintiffs, for themselves and on behalf of the New York (Rule 23) Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

94.     Defendants, in violation of N.Y. Lab. Law §§ 190 and 650 et seq., and supporting regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half (1.5) the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

95.     As a result of Defendants' knowing or intentional failure to pay Plaintiffs overtime wages for hours worked in excess of forty (40) hours per workweek, Plaintiffs are entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

96.     All members of the New York Class are similarly entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A FIFTH CAUSE OF ACTION
### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER
### OF THE NEW YORK COMMISSIONER OF LABOR
### (On Behalf of Plaintiffs and the New York Class – Rule 23)

97.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

98.    Defendants willfully failed to pay Plaintiffs (and the NYLL (Rule 23) Class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten (10) hours in violation of New York Lab. Law §§ 190 et seq. and 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. TIT. 12, § 146-1.6.

99.    Plaintiffs and members of the NYLL Class were damaged in amounts to be determined at trial.

100.    Due to Defendants' willful violations of the NYLL, Plaintiffs and members of the Rule 23 Class are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### AS AND FOR A SIXTH CAUSE OF ACTION
**Illegal Deductions, New York Labor Law, Article 19 § 193
and 12 N.Y.C.R.R. § 2.10(a).
(On Behalf of Plaintiffs and the New York Class – Rule 23)**

101.    Plaintiffs incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

102.    In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Plaintiffs and members of the New York Class, including, *inter alia*, requiring Plaintiffs and similarly situated workers to provide and pay for their own "tools of the trade," which further reduced their effective, hourly rates of compensation below the required minimum and overtime rates of pay.

103.    As a result of the foregoing, Plaintiffs seek judgment against Defendants on their own behalf, and on behalf of putative New York Class Members similarly situated for reimbursement of unlawful deductions, as well as liquidated damages, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements
### (On Behalf of Plaintiffs and the New York Class – Rule 23)

104.     Plaintiffs, on behalf of themselves and the New York Class members, repeat and re-allege and incorporate each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

105.     The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

106.     Defendants willfully failed to provide Plaintiffs and the New York Class with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

107.     Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act (WTPA) – Failure to Provide Wage Notices
### (On Behalf of Plaintiffs and the New York Class – Rule 23)

108.     Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeats, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

109.    The NYLL and WTPA, as well as the NYLL's interpretative wage orders, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

110.    From its enactment on April 9, 2011 through January 5, 2016, the WTPA also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment (amended in January 2015 to be distributed "upon hiring" and not annually) and to provide to employees, a written notice setting forth the employee's rates of pay and basis thereof; the name of the employer; physical address of the employer's business; names used by the employer; and other mandated disclosure.

111.    In violation of NYLL § 191, Defendants failed to furnish Plaintiffs, at the time of hiring (and annually for those years prior to the January 2015 amendment) or whenever there was a change to their rate of pay, with wage notices required by NYLL § 191.

112.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs and NYLL Class Members are entitled to recover from Defendants liquidated damages: (a) for the time period commencing six years before the filing of this Complaint, through January 5, 2015, the sum $50 per work week, up to $2,500; and (b) from January 6, 2015 through the resolution of this case, $50.00 per work day, up to $5,000.00, together with reasonable attorneys' fees, and costs of this action, pursuant to the NYLL § 198(1-b).

### AS AND FOR AN NINTH CAUSE OF ACTION
**Declaratory Judgment**
**(On Behalf of Plaintiffs, FLSA Class and New York Class – Rule 23)**

113.    Plaintiffs, for themselves and on behalf of the FLSA Class and New York Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

114.    This action provides a ripe and justiciable case or controversy.

115.    It is just and equitable that the Court declares the rights and other legal relationships of the parties.

116.    Plaintiffs, the FLSA Class and New York Class are entitled a declaration that Defendants acts are in violation of the FLSA and NYLL.

### RELIEF SOUGHT

**WHEREFORE,** the Plaintiffs MARIO LLIVICHUZHCA, ILDIFONCIO MAYANCELA, LUIS MAYANCELA, and LUIS RODRIGO ANGAMARCA, on behalf of themselves and the FLSA Class and the New York Class, respectfully request that the Court grant the following relief:

1.    Designation of this action as a collective action on behalf of the FLSA Class members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b) and appointing Plaintiffs and their undersigned counsel, to represent the FLSA Class Members;

2.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the New York Class members and appointing Plaintiffs and their undersigned counsel to represent the class;

3.    An order tolling the statute of limitations;

4.    That the Court declare, adjudge and decree that Defendants violated the minimum wage provisions of the FLSA as to Plaintiffs and the FLSA Class;

5.    That the Court declare, adjudge and decree that Defendants violated the minimum wage provisions of the NYLL as to Plaintiffs and the NYLL Class;

6.    That the Court declare, adjudge and decree that Defendants violated the overtime wage provisions of the FLSA as to Plaintiffs and the FLSA Class;

7.     That the Court declare, adjudge and decree that Defendants violated the minimum wage provisions of the NYLL as to Plaintiffs and the NYLL Class;

8.     That the Court declare, adjudge and decree that Plaintiffs, the FLSA Class, and NYLL Class were at all times relevant hereto, and are, entitled to be paid (a) minimum wages required by the NYLL and FLSA; (b) overtime for work beyond 40 hours in a week required by the NYLL and FLSA; and (c) remuneration for unlawful deductions; and that the amounts to which Plaintiffs, the FLSA Class and the New York Class are entitled is to be doubled as liquidated damages and awarded thereto.

9.     That the Court make an award to Plaintiffs, the FLSA Class and the New York Class of damages and/or restitution for the amount of unpaid compensation, unpaid overtime compensation, including interest thereon, and statutory penalties/liquidated damages in amounts to be proven at trial;

10.     That the Court make an award to Plaintiffs and the New York Class of reimbursement for all unlawful deductions;

11.     For all other Orders, findings and determinations identified and sought in this Complaint;

12.     For pre-judgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate, under the NYLL and CPLR;

13.     For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law;

14.     Declaring that Defendants violated the notices and record keeping provisions of NYLL and WTPA;

15.     An award of statutory damages for Defendants' failure to provide accurate wage statements pursuant to the NYLL and applicable wage orders;

16.     An award of statutory damages for Defendants' failure to provide proper and/or accurate wage notices pursuant to the NYLL and wage orders;

17.     A permanent injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL; and

18.     Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: February 15, 2018                    **RAPAPORT LAW FIRM, PLLC**

By:                    /s/
_____
Marc A. Rapaport, Esq.
Meredith R. Miller, Esq.
Attorneys for Plaintiffs
and the Plaintiff Classes
One Penn Plaza, Suite 2430
New York, New York 10119
Ph: (212) 382-1600